**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| JENNIFER ASHER, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF WILLIAM ASHER, DECEASED )))))) | | |
| Plaintiff, ) | Case No. | |
| ) | | |
| v. ) | | |
| ) | | |
| RIPLEY ENTERTAINMENT, INC., ) SERVE: CT CORPORATION SYSTEM ) 120 SOUTH CENTRAL AVE. ) CLAYTON, MO 63105 ) ) Defendant. ) | **JURY TRIAL DEMANDED** | |

## COMPLAINT

Plaintiff Jennifer Asher, Individually and as Personal Representative of the Estate of William Asher, by and through counsel, alleges as follows:

1. Decedent William Asher drowned on July 19, 2018, while taking a recreational ride on an amphibious vehicle known as a DUKW or "Duck" boat.

2. Defendant is in the business of providing 70-minute long recreational excursions in its Duck Boats on the land and water surrounding the Ozarks.

3. Duck Boats have caused numerous fatalities and injuries for almost twenty years due to the dangerous design of the canopy and due to its lack of buoyancy and reserve buoyancy.

4. Defendant's lack of safety training and/or procedures for its employees and lack of safety training and/or procedures to its passengers only increased the inherent dangers of the Duck Boat.

1

5. Defendant's continued operation of Duck Boats despite repeated fatalities, warnings and recommendations to change the dangerous design caused the horrific and avoidable tragedy on Table Rock Lake on July 19, 2018.

6. On July 19, 2018, at 6:28 p.m., Defendant took the lives of seventeen people when it made the conscious decision to disregard the known dangers of its vehicles in volatile weather and instructed its employees to begin their excursion on the water.

## PARTIES

7. Decedent William Asher was a resident of St. Louis, Missouri, at the time of his death on July 19, 2018.

8. Plaintiff Jennifer Asher is an individual and resident of St. Louis, Missouri, and is the adult daughter of the deceased William Asher. She is the proper party to bring this action against Defendant pursuant to the Missouri Wrongful Death Statute, Section 537.080 RSMo.

9. Defendant Ripley Entertainment Inc. is a Delaware corporation with its principal place of business in Florida. Ripley has at all relevant times engaged in substantial, continuous, regular and systematic business in the State of Missouri.

10. Defendant Ripley Entertainment Inc. owns, operates and/or managed the Duck Boat, Stretch Duck 07, involved in this tragedy.

11. At all relevant times herein, Defendant Ripley Entertainment Inc. acted by and through its respective agents and employees acting within the scope of their authority and employment.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity among the parties and the amount in controversy exceeds the jurisdictional amount of $75,000.00.

13. Venue is proper in the Western District of Missouri pursuant to 28 U.S.C. 1391(b)(2).

## PERTINENT FACTS

14. This lawsuit, companion suits involving additional victims, and predecessor wrongful death lawsuits and fatalities are the natural and foreseeable result of Defendant's operation of inherently dangerous amphibious vehicles and defendant's conscious and flagrant disregard for the life and safety of its passengers.

15. Defendant placed profits over people in deciding to maintain its business in this manner and to operate Stretch Duck 07 on July 19, 2018.

16. Defendant knowingly and deliberately ignored minimum safety standards, failed to train its employees on safety procedures and failed to warn its passengers of the known dangers of riding in a Duck Boat.

## THE JULY 19, 2018, TRAGEDY TIMELINE

17. Decedent was traveling on a 14-day vacation in Branson when he purchased the fatal tickets and rode the fatal Stretch Duck 07 owned by Defendant.

18. At 11:20 a.m. on July 19, 2018, the National Weather Service issued a severe thunderstorm watch for Table Rock Lake through 9 p.m.

19. From 11:55 a.m. through 6:07 p.m., multiple severe thunderstorm warnings were issued for the areas surrounding Table Rock Lake and indicated the potential for 60-mph winds and hail.

20. At 6:15 p.m., a severe weather statement was issued indicating wind gusts of up to 70 mph were possible from this line of storms.

21. At 6:27 p.m., the captain and driver boarded Stretch Duck 07.

22. At 6:28 p.m., the Duck Boat crew was asked by an unknown employee or agent of Defendant to take the passengers on the water portion of the tour before taking them on the land tour.

23. At 6:29 p.m., the passengers began boarding Stretch Duck 07 vehicle. The captain of the boat remarked on the developing weather and looking at the weather radar.

24. At 6:32 p.m., a severe thunderstorm warning was issued for Taney and Stone counties. This warning included Table Rock Lake and would remain in effect until 7:30 p.m.

25. At 6:33 p.m., the driver of the Duck Boat noted the passenger count of 29 and the vehicle departed the terminal.

26. At or around 6:50 p.m., the captain provided a five-minute safety briefing to the passengers. The safety briefing did not encourage or require passengers to wear life-jackets.

27. At 6:55 p.m., Stretch Duck 07 entered the water approximately 23 minutes after the warning for Table Rock Lake was issued.

28. From 6:56 p.m. to 7:00 p.m., the captain allowed four different children to sit in the driver's seat under his supervision.

29. From 7:00 p.m. to 7:01 p.m., the wind increased and caused whitecaps to appear. The captain returned to the driver's seat and made a comment about the storm. The driver lowered the plastic curtains over the side windows of the Duck Boat.

30. At 7:02 p.m., another severe thunderstorm warning was issues for Taney and Stone counties indicating the potential for 70-mph winds and hail.

31. At 7:03 p.m., the captain made a call on the hand-held radio.

32. From 7:04 p.m. to 7:05 p.m., Stretch Duck 07 sounded an alarm that indicates dangerous levels of water in the bilge, and the captain reached down with his right hand, after which the alarm ceased. He then made a second call on the hand-held radio.

33. At some point, a survivor of the tragedy noted the captain "began freaking out" about the conditions on the boat.

34. At 7:07 p.m., a second alarm sounded, again indicating dangerous levels of water in the bilge. At 7:08 p.m., the onboard recorder ceased operating.

35. At 7:08 p.m., an inward-facing video recorder capturing the vents from the cabin of the Duck Boat stopped recording.

36. At 7:09 p.m., the first 911 calls were recorded by Stone County Public Safety Dispatch.

37. At 7:10 p.m., the first emergency responder alert went out over emergency radio.

38. Stretch Duck 07 submerged at approximately 7:13 p.m.

39. The weather, the alarms of danger and the sinking vessel itself were the final and terrorizing moments of Decedent's life.

40. Seventeen of the thirty-one passengers aboard Stretch Duck 07 tragically drowned.

41. Not one passenger was wearing a life jacket when the Duck Boat sunk. Unused life jackets were still attached to Stretch Duck 07 when it was raised from the Lake.

## THE DUKW DESIGN AND THE STRETCH DUCK MODIFICATION

42. A DUKW is an amphibious landing vehicle that was designed to transport military personnel and supplies for the U.S Army during World War II. The vehicles were designed in 1942.

43. The Stretch Duck design was a modification engineered by Robert McDowell, a previous owner, and produced by Amphibious Vehicle Manufacturing. Stretch Duck 07, the vehicle in this tragedy, was manufactured with this modification.

44. McDowell altered the original Duck design to make room for additional passengers.

45. Duck Boats, in general, are not seaworthy. Stretch Duck 07, in particular, was not seaworthy.

46. The Duck Boat industry has known of the dangerous design of its vehicles for almost twenty years.

47. The National Transportation Safety Board ("NTSB") issued recommendations for modifications after the May 1, 1999, drowning of 13 Duck Boat passengers on the Miss Majestic Duck Boat.

48. At the time, suggested safety modifications were estimated to cost approximately $12,000 per vehicle.

49. Despite the minimal costs, the warnings and recommendations went unheeded.

50. On July 23, 2002, four people died in Canada on a Duck Boat called the Lady Duck.

51. After that tragedy, the company altered the vehicle to fulfill all safety recommendations.

52. Duck Boats are also operated in Dublin, Ireland, on the Grand Basin Canal.

53. The Irish Duck Boats, advertised as Viking Splash Tours, are similar to Stretch Duck 07 but they utilize additional flotational devices called sponsons to increase their safety.

54. The Viking Splash Tours require every passenger to wear a life jacket – without exception.

55. Defendant did nothing to modify its dangerous design to increase safety for its passengers despite multiple warnings and recommendations from the NTSB.

56. Subsequent fatalities also failed to result in safety modifications by Defendant.

57. Defendant hired Steven Paul of Test Drive Technologies to conduct an inspection of the Duck Boats in 2017, prior to taking ownership of the attraction, and was warned of the dangerous design, including the exhaust pipe location and concerns about the canopies limiting passenger escape.

58. Defendant was warned that the design flaw with the exhaust pipes would likely cause the engine to fail.

59. Defendant knew the canopy could trap people.

60. Defendant knew additional buoyancy was required.

61. Jim Pattison, Jr., the President of Defendant, knew and admitted Stretch Duck 07 should not have been on the water at the time of the storm.

62. Defendant provided inadequate safety training, procedures and/or supervision for its employees.

63. Defendant provided inadequate safety training, procedures and/or supervision of its passengers.

64. Approximately 40 people have died on these vehicles since 1999.

## COUNT I - STRICT PRODUCT LIABILITY

65. Plaintiff hereby incorporates by reference the allegations set forth in the preceding paragraphs, as if fully set forth herein.

66. Defendant, by and through its employees and agents, knew of its inherently dangerous product yet sold recreational excursions to passengers without notifying them of its inherent dangers.

67. Defendant placed Stretch Duck 07 into the stream of commerce.

68. Stretch Duck 07 was used in a manner reasonably anticipated by Defendant.

69. Stretch Duck 07 was defective and unreasonably dangerous.

70. The consequences of using the unreasonably dangerous Stretch Duck 07 were known to Defendant and were reasonably anticipated based on previous accidents and fatalities.

71. Defendant purposely failed to correct and/or prevent the unreasonably dangerous conditions that existed in its product.

72. Defendant was fully aware of the unreasonable danger of its product due to the sheer number of fatalities that have occurred over the last almost twenty years.

73. Defendant knew, or should have known, of the defective and dangerous conditions of Stretch Duck 07 and that such conditions would cause severe injuries or fatalities. Defendant showed complete indifference and/or conscious disregard for the safety of others, including Decedent, justifying the imposition of punitive damages in an amount to punish Defendant and to deter like conduct.

74. As a result, Plaintiff suffered damages for pecuniary losses, funeral expenses, the reasonable value of services, consortium, companionship, comfort instruction, guidance, counsel, training and support.

WHEREFORE, Plaintiff requests this Court enter judgment against Defendant for compensatory damages in excess of the $75,000.00 jurisdictional threshold, along with punitive

damages, costs, interests, fees, attorneys' fees, and for any other relief that the Court may deem proper.

## **COUNT II – NEGLIGENCE**

75. Plaintiff hereby incorporates by reference the allegations set forth in the preceding paragraphs, as if fully set forth herein.
76. Defendant owed Plaintiff a duty to act reasonably in conducting its Duck Boat tours and to obey all waterway and boating rules and standards in operating its Duck Boats.
77. Defendant breached that duty by operating its inherently dangerous vehicles.
78. Defendant proximately caused Plaintiff's injuries when Stretch Duck 07 it was operating sank to the bottom of Table Rock Lake.
79. Defendant was negligent in operating Stretch Duck 07 in dangerous weather conditions of which it was aware.
80. Defendant was negligent in failing to provide and maintain the safety of its passengers by operating vehicles it knew were dangerous.
81. Defendant utterly failed to prepare or require any safety measures for the passengers on its vehicles.
82. Defendant knew, or should have known, of the defective and dangerous conditions of Stretch Duck 07 and that such conditions would cause severe injuries or fatalities. Defendant showed complete indifference and/or conscious disregard for the safety of others, including decedent, justifying the imposition of punitive damages in an amount to punish Defendant and to deter them and others from like conduct.

83. As a result, Plaintiff suffered damages for pecuniary losses, funeral expenses, the reasonable value of services, consortium, companionship, comfort instruction, guidance, counsel, training and support.

WHEREFORE, Plaintiff requests this Court enter judgment against Defendant for compensatory damages in excess of the $75,000.00 jurisdictional threshold, along with punitive damages, costs, interests, fees, attorneys' fees, and for any other relief that the Court may deem proper.

### COUNT III - WRONGFUL DEATH

84. Plaintiff hereby incorporates by reference the allegations set forth in the preceding paragraphs, as if fully set forth herein.
85. Plaintiff Jennifer Asher is the Personal Representative of Decedent William Asher's estate and is the proper party to bring this action pursuant to the Missouri Wrongful Death Statute, Section 537.080 RSMo.
86. Plaintiff Jennifer Asher claims, on behalf of the Estate of William Asher, all damages suffered by the estate by reason of the death of William Asher, including but not limited to the severe injuries to William Asher, including his tragic drowning and fear of impending death, the loss of future earning capacity suffered by William Asher from the date of his death through the time that he would have lived, and the loss and deprivation of his normal activities through such time in the future as he would have lived, as a result of the injuries sustained by reasons of Defendant's negligence and conscious disregard for the safety of others.
87. By reason of his death, William Asher's beneficiaries have in the past and will in the future continue to suffer great pecuniary loss, including but not limited to, loss of

support, loss of aid, loss of services, loss of companionship and comfort, loss of counseling and loss of guidance.

88. As a result, Plaintiff suffered damages for pecuniary losses, funeral expenses, the reasonable value of services, consortium, companionship, comfort instruction, guidance, counsel, training and support.

WHEREFORE, Plaintiff requests this Court enter judgment against Defendant for compensatory damages in excess of the $75,000.00 jurisdictional threshold, along with punitive damages, costs, interests, fees, attorneys' fees, and for any other relief that the Court may deem proper.

## COUNT IV – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

89. Plaintiff hereby incorporates by reference the allegations set forth in the preceding paragraphs, as if fully set forth herein.
90. Plaintiff's presence on Stretch Duck 07 when it sank caused his sudden death.
91. Defendant was aware of the dangerous weather conditions when Stretch Duck 07 began the excursion on the evening of July 19, 2018.
92. An unknown employee of Defendant directed Stretch Duck 07 to begin its excursion on Table Rock Lake rather than on land.
93. Defendant's reorganization was an attempt to avoid the dangerous weather conditions on the lake.
94. Plaintiff was aware that the weather turned volatile.
95. Defendant's agent rolled down the plastic curtains over the side windows of the Duck Boat as a result of the changing weather conditions.

96. Plaintiff was aware Stretch Duck 07 was at risk of sinking due to the damaging winds and the lower water level of the vessel.
97. Plaintiff was aware that the captain of the vessel was "freaking out."
98. Plaintiff was aware that he and his girlfriend were in the zone of danger and that they were likely to lose their lives at that time.
99. In addition to his physical injuries, Plaintiff suffered emotional distress, psychological pain and suffering, severe mental anguish and other psychological, emotion and mental injuries.

WHEREFORE, Plaintiff requests this Court enter judgment against Defendant for compensatory damages in excess of the $75,000.00 jurisdictional threshold, along with punitive damages, costs, interests, fees, attorneys' fees, and for any other relief that the Court may deem proper.

## COUNT V – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

100. Plaintiff hereby incorporates by reference the allegations set forth in the preceding paragraphs, as if fully set forth herein.
101. Defendant acted intentionally and recklessly by placing Stretch Duck 07 into Table Rock Lake at a time when it knew severe weather conditions were developing.
102. Placing a vessel that is prone to fatalities through drowning into a lake with developing severe weather conditions is extreme and outrageous conduct.
103. Placing Stretch Duck 07 into Table Rock Lake at that time caused Decedent extreme emotional distress and fear for his life and for the life of his girlfriend.

WHEREFORE, Plaintiff requests this Court enter judgment against Defendant for compensatory damages in excess of the $75,000.00 jurisdictional threshold, along with punitive damages, costs, interests, fees, attorneys' fees, and for any other relief that the Court may deem proper.

## COUNT VI – VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT

104. Plaintiff hereby incorporates by reference the allegations set forth in the preceding paragraphs, as if fully set forth herein.

105. The Missouri Merchandising Practices Act ("MMPA") makes it unlawful to misrepresent or conceal any material fact "in connection with the sale or advertisement of any merchandise in trade or commerce." Section 407.020(1) RSMo.

106. Defendant sold tickets to its Ride the Ducks tours and represented that the Duck Boats are designed for "maximum safety."

107. Defendant's claim that the Duck Boat was designed for "maximum safety" is a misrepresentation, conceals the truth of the faulty design, and omits the material fact that there have been multiple fatalities due to the inherently unsafe vessel.

108. Defendant's claim of maximum safety is inherently unethical and misleading.

109. Defendant's claim caused Decedent substantial injury in that it was the cause of his death.

110. Plaintiff's losses warrant punitive damages as provided in the MMPA Section 407.025(1) RSMo.

WHEREFORE, Plaintiff requests this Court enter judgment against Defendant for compensatory damages in excess of the $75,000.00 jurisdictional threshold, along with punitive

damages, costs, interests, fees, attorneys' fees, and for any other relief that the Court may deem proper.

Respectfully Submitted,

*/s/* John Wilbers_____
Mr. John L. Wilbers #51848
The Wilbers Law Firm, LLC
130 S. Bemiston, Suite 406
St. Louis, MO 63105
Ph: (314) 721-3040 Fx: (314) 721-3052
jwilbers@thewilberslawfirm.com

and

Angela Bullock Gabel #58227
ABG Law
7710 Carondelet Ave., Suite 405
Clayton, MO 63105
Ph. (314)721-8844
agabel@abglawoffice.com

*Attorneys for Plaintiff*